IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS HERNANDEZ and KELLY HERNANDEZ a/k/a KELLY GRANT, | ) ) ) | |
| Plaintiffs, | ) ) | No. 11 C 6635 |
| v. | ) ) | Jeffrey T. Gilbert |
| WYNDHAM HOTEL MANAGEMENT, INC., | ) ) ) | Magistrate Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Louis Hernandez ("Hernandez") brought a negligence claim against Defendant Wyndham Hotel Management, Inc. ("Wyndham") as the result of an injury he suffered during his stay at the Wyndham Hotel in Lisle, Illinois in the early morning hours of August 30, 2010 when another hotel guest stabbed him.[1] Hernandez claims that his injury was reasonably foreseeable, and Wyndham negligently failed in its duty to inform him of the danger he faced or to intercede so that matters did not escalate to the point of Hernandez getting stabbed. This matter is before the Court on Wyndham's Motion for Summary Judgment [Dkt.#48] pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, Wyndham's Motion is granted.

---

[1] In the Complaint filed by Hernandez, his wife Kelly Grant also was named as a plaintiff, and she filed a claim of negligent infliction of emotional distress. *See* Compl. [Dkt.#1-2]. In Hernandez's Response to Wyndham's Motion for Summary Judgment, Hernandez states that the parties agreed to dismiss Grant from the lawsuit. Wyndham denies that there was any agreement. It is clear, however, that Grant is not pursuing her claim for negligent infliction of emotional distress. Therefore, Wyndham's Motion for Summary Judgment as to Count II is granted.

## I. STATEMENT OF FACTS

For purposes of this motion, the following facts are taken from Wyndham's Local Rule 56.1 Statement of Facts.[2] On August 29, 2010, Hernandez and his wife Kelly Grant arrived at the Wyndham Hotel between 6:30 and 7:00 p.m. for a high school reunion. Def.'s L.R. 56.1 Statement of Material Facts ("SOF") [Dkt.#50], at ¶6. When the reunion ended at midnight, Hernandez, Grant, and others went to the hotel bar. *Id.* at ¶13. The bar closed at 1:00 a.m., and a friend of Hernandez continued the party in his hotel suite, Room 601. *Id.* at ¶¶13–17. Hernandez and his wife decided to stay overnight at the hotel, and their room, Room 602, adjoined Room 601 in which the party was held. *Id.* at ¶¶19, 20, 22. The adjoining door in between the rooms was opened so that people in both suites could mingle. *Id.* at ¶23.

In Room 603, two other hotel guests, Tony Oliver and Lance Martin, were sleeping. Def.'s L.R. 56.1 SOF [Dkt.#50], at ¶¶2, 12. They had returned to their suite at about midnight after attending an IndyCar race at the Joliet Speedway. *Id.* at ¶¶1, 8. Oliver and Martin intended to check out in the morning about 6:00 a.m. and drive to Indiana. *Id.* at ¶11.

During the night, Martin was awakened when he heard a door unlock. Def.'s L.R. 56.1 SOF [Dkt.#50], at ¶30. He then heard a party begin in the adjacent room with music and talking. *Id.* Martin got frustrated that he could not go back to sleep because of the noise. *Id.* at ¶31. He could not figure out how to call the front desk, so he got dressed and walked there. *Id.* at ¶32. Martin told the front desk clerk that there was a lot of noise coming from a loud party in the room next door. *Id.* ¶35. He asked if the hotel could take care of it and quiet it down. *Id*.

---

[2] In his response to Wyndham's Motion for Summary Judgment, Hernandez stated: "For purposes of this Response, Plaintiffs adopt Defendant's Rule 56.1 Statement of Material Facts." *See* [Dkt.#55]. When the party opposing summary judgment fails to controvert the material facts set forth by the moving party, those facts are deemed admitted. *See* Local Rule 56.1(b)(3)(C).

Martin did not recall what the clerk said in response. Def.'s L.R. 56.1 SOF [Dkt.#50], at ¶36. But since Martin returned to his room, he testified that he assumed the problem would be taken care of. *Id.* The clerk recalled that Martin said something to the effect of "either you make them be quiet or I will." *Id.* at ¶40. But Martin denied saying that. *Id.* at ¶37. The front desk clerk understood what Martin said to mean that Martin would keep complaining until the issue was resolved. *Id.* at ¶41. The clerk did not find Martin to be aggressive or hostile enough to call 911. *Id.* at ¶43. Further, the clerk did not take what Martin said to mean that he was going to confront the guests in the other room. *Id.* at ¶42.

The party still was going on next door when Martin returned to his suite from the front desk. Def.'s L.R. 56.1 SOF [Dkt.#50], at ¶45. He tried to fall asleep for fifteen to twenty minutes, but the noise never lessened, so he called the front desk. *Id.* at ¶48. During the phone call, Oliver awoke. *Id.* at ¶53. He had been in and out of sleep. *Id.* at ¶54. Martin explained to Oliver what he had been doing, and Oliver said he was going to go to the front desk. *Id.* at ¶55. The room was registered in Oliver's name, and he was a rewards member, so he thought the front desk clerk would listen to him. *Id.* In frustration, Oliver then shut or slammed his door loud enough for the people in the next suite to hear. *Id.* at ¶56.

As Oliver headed down the hall, he met a woman who asked him what his problem was. Def.'s L.R. 56.1 SOF [Dkt.#50], at ¶59. Oliver said he did not really have a problem. *Id.* He said was going to the front desk to complain about the noise coming from Room 601. *Id.* The woman then knocked on Room 601 and told them that Oliver was going to the front desk to report the party. *Id.* at ¶61. Hernandez and one or two people left the room to catch up to and stop Oliver. *Id.* at ¶62.

3

In response to Martin's noise complaint, the front desk clerk had called Room 601, but no one answered. Def.'s L.R. 56.1 SOF [Dkt.#50], at ¶50. The clerk then called the manager on duty. *Id.* at ¶51. The manager sleeps in one of the rooms during the night shift, and the front desk can call if there is a problem. *Id.* at ¶28. When the clerk called the manager, the manager also was staying on the sixth floor, but she had not heard anything. *Id.* at ¶52. Still, she said she would take care of it. *Id.* The manager spent some time getting dressed and preparing herself to speak with the guests. *Id.* at ¶63. When the manager went out into the hallway, however, the first thing she saw were police officers restraining and apprehending Oliver. *Id.* at ¶64. A fight between Oliver and Hernandez had started, and Hernandez was stabbed before the manager made it into the hallway. *Id.* at ¶¶65–66.

## II. DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Id*. at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute (*Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000)), the court must construe all facts in a light most favorable to the nonmoving party as well

4

as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In its Motion for Summary Judgment, Wyndham argues that it is entitled to summary judgment because the law does not impose any duty on Wyndham in this case to protect Hernandez from another hotel guest or to prevent Oliver's criminal act of stabbing Hernandez because such a criminal act was not reasonably foreseeable. To state a cause of action for negligence under Illinois law, a party must establish (1) the existence of a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by that breach. *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012) (quoting *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006)).[3] While breach and proximate cause are factual matters for the jury to decide, whether a duty is owed is a question of law for the court. *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007). Without any duty, there is not any negligence, and a plaintiff cannot recover as a matter of law. *Washington v. City of Chicago*, 188 Ill.2d 235, 239 (Ill. 1999).

The existence of a duty depends on whether a plaintiff and defendant have such a special relationship that the law imposes upon the defendant an obligation to act reasonably for the plaintiff's benefit. *Marshall*, 856 N.E.2d at 1057. Ordinarily, a private party has no duty to act affirmatively to protect another from criminal attack by a third party absent a special relationship between the parties. *Iseberg*, 879 N.E.2d at 284. When a special relationship exists and an

---

[3] The parties do not dispute that Illinois law applies in this case. In cases arising under diversity jurisdiction, this Court looks to Illinois for its choice of law rules, and Illinois follows the Restatement (Second) "most significant contacts" approach for tort actions. *DeMyrick v. Guest Quarters Suite Hotels*, 944 F. Supp. 661, 665 (N.D. Ill. 1996) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941); *Ingersoll v. Klein*, 46 Ill. 2d 42 (1970)). All of the factors set forth in *Ingersoll*, which include (1) the place where the injury occurred, (2) the place where the conduct occurred, (3) the domicile, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship of the parties is centered, point to Illinois law with only the place of incorporation of defendant in New Jersey being a non-Illinois factor.

5

unreasonable risk of physical harm arises within the scope of that relationship, a duty may be imposed on the one to exercise reasonable care to protect the other from such risk, if the risk is reasonably foreseeable. *Id.* at 285; *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 89 (1st Dist. 1992) ("[R]easonable foreseeability of harm is a primary concern.").

Illinois has long recognized a "special relationship" between an innkeeper and guest. *See, e.g.*, *Fancil v. Q.S.E. Foods, Inc.*, 328 N.E.2d 538, 542 (Ill. 1975). Innkeepers specifically owe their guests a duty to protect them from harm "as long as they have the requisite knowledge of previous incidents or special circumstances [that] would charge the [innkeepers] with knowledge of the danger and the duty to anticipate it." *Comastro v. Village of Rosemont*, 461 N.E.2d 616, 619 (Ill. App. 1984) (internal quotation marks and citation omitted). When an innkeeper has knowledge of such prior incidents or special circumstances, the innkeeper is bound to take reasonable precautions, and it is a question of fact for a jury to determine what are reasonable precautions. *See id.* at 409. A determination whether Hernandez may proceed to trial, therefore, hinges on whether the danger Oliver presented to Hernandez was reasonably foreseeable so as to create a duty for Wyndham to protect Hernandez from a criminal act, which in this case was getting stabbed.

Relying on *Mrzlak v. Ettinger*, 323 N.E.2d 796 (Ill. App. Ct. 1975) and two other similar cases, Hernandez argues that whether a criminal act of an assailant was foreseeable is a question of fact for a jury. Pl.'s Resp. to Def.'s Mot. [Dkt.#56], at 1–2. In *Mrzlak*, the court found the foreseeability of a criminal act to be a question for the jury because the plaintiff could point to evidence from which the jury might find foreseeability. In *Mrzlak*, the plaintiff was assaulted (when staying at a residence for girls) by an unknown assailant who entered the building through a second-story bathroom window. The plaintiff brought an action against the residence's owners

6

and operators, alleging that they were negligent in failing to maintain the premises in a safe condition so as to prevent her assault. *Id.* at 797–98. After a jury found for the plaintiff, the residence owners and operators appealed, claiming that they were not liable to her as a matter of law because they did not owe her a duty to protect her against the unforeseeable, independent criminal acts of a third party. *Id.* at 798. The criminal act was unforeseeable, they argued, and there had been no previous incidents. *Id.* at 798. But the Illinois Appellate Court found that a jury could conclude otherwise, relying on several witnesses who testified about previous attempted break-ins. *Id.* In light of such evidence, the Illinois Appellate Court found that "the question of foreseeability was properly a question for the jury," and the jury's decision would not be overturned on appeal. *Id.*

The facts in *Mrzlak* and the two other cases cited by Hernandez, each of which involve a hotel's duty to keep out of the hotel intruders who do not belong, are substantially different than the undisputed facts in this case. Here, Wyndham had no indication from Oliver, who was a hotel guest, that he was any threat to Hernandez. There also is no evidence, unlike in *Mrzlak*, of any previous criminal activity at the Wyndham hotel. In this case, it is not disputed that Martin went downstairs to the front desk to complain about the noise and said something to the effect of "either you make them be quiet or I will." (Martin actually denies making that statement, but the hotel clerk says he did and the Court will assume he did for these purposes.) This statement does not impute the requisite knowledge to Wyndham that another person, Oliver, is a potential threat to hotel guests or that any criminal act against Hernandez or any other hotel guest is reasonably foreseeable.

The Court recognizes that in *Mrzlak* the Illinois Appellate Court held that "where an assault upon a guest by a third party is involved . . . the hotel is held to a high degree of care."

7

323 N.E.2d at 800. The Court, however, is not persuaded by Hernandez's argument that Wyndham failed to meet this standard of care. To the contrary, the Court finds that Wyndham did not have any duty to anticipate any threat or danger to Hernandez from Oliver and therefore did not have any obligation or duty to protect Hernandez based on the specific circumstances and undisputed facts of this case.

Innkeepers owe their guests a duty to protect them from harm only when "they have the requisite knowledge of previous incidents or special circumstances that would charge the [innkeeper] with knowledge of the danger and the duty to anticipate it." *Comastro*, 122 Ill. App. 3d at 408. In this case, there is no evidence of previous incidents at the hotel or any special circumstances that triggered any duty. The parties involved did not encounter each other prior to the confrontation when the stabbing occurred so as to put Wyndham on any notice. Oliver did not interact with anyone affiliated with Wyndham before the incident that would have alerted Wyndham to any risk of harm he posed to any guest much less Hernandez. Martin's interaction with the desk clerk also was not of a nature that should have put Wyndham on notice of danger so as to trigger a duty for Wyndham to protect Hernandez. And there is nothing in the record about prior problems at the hotel involving violence among hotel guests.

A noise complaint registered by one guest is not sufficient as a matter of law to put an innkeeper on notice that another hotel guest (who previously had not complained to management) may harm, and in this case stab, a third hotel guest in the vicinity of the room that was the subject of the noise complaint. Nevertheless, once notified of the noise complaint, it is undisputed that the front desk employee placed a call to Room 601, but no one answered. It also is not disputed that the complaint was about noise coming from Room 601. *See* Def.'s L.R. 56.1 SOF [Dkt.#50], at ¶¶51, 59, 61. The front desk clerk also called the manager on duty, who

8

because it was the night shift was sleeping in one of the hotel rooms on the sixth floor, to inform her of the complaint. The manager said she would take care of it. Wyndham did try to inform the occupants of Room 601 of the noise complaint and was in the process of trying to address that complaint when Hernandez was stabbed. Nothing more was required under the circumstances.

Therefore, the Court concludes as a matter of law that Wyndham did not owe Hernandez a duty to exercise reasonable care to protect him from the stabbing that occurred in this case. Although a special relationship existed between the parties, Oliver's criminal act was not reasonably foreseeable, and Wyndham did not have a duty to anticipate it. Without any duty of care owed by Wyndham to Hernandez, Hernandez's claim for negligence fails as a matter of law.

### III. CONCLUSION

For all the reasons discussed in the Court's Memorandum Opinion and Order, Defendant Wyndham Hotel Management, Inc.'s Motion for Summary Judgment [Dkt.#48] is granted, and judgment is entered in favor of Defendant.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 9, 2013